UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARSHON MYERS,

       Plaintiff,                      Case No. 2:14-10220
                                                    District Judge Stephen J. Murphy, III
v.                                           Magistrate Judge Anthony P. Patti

CYNTHIA FITZGERALD, *et al.*

       Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT LEFFLER'S MOTION FOR SUMMARY JUDGMENT (DE 34)

**I. RECOMMENDATION**: The Court should grant Defendant Angie Leffler's motion for summary judgment. (DE 34.)

**II. REPORT**

    **A. Background**

Plaintiff, Marshon Myers, who is proceeding without the assistance of counsel, filed his complaint and application to proceed *in forma pauperis* on January 16, 2014. (DE 1 and 2.) The Court granted the application on January 22, 2014. (DE 4.) At the time, Plaintiff was a state prisoner, housed at the Cooper Street Correctional Facility. Since then, Plaintiff has been released and is living at a private address in Michigan. (DE 28.)

Plaintiff brings this action pursuant to the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. § 2, Mich. Comp. Laws § 780.601. He initially named eleven Defendants, but ten have been dismissed. The only remaining Defendant is Angie Leffler, who is the Records Officer Supervisor at the Cooper Street Correctional Facility. (DE 34-2 at ¶ 1.) Defendant Leffler avers that part of her duties include processing IAD requests. (DE 34-2 at ¶ 1.) Plaintiff asserts that Defendant Leffler violated his rights under the IAD by failing to properly submit paperwork to the Cook County Prosecutor's office after receiving a request from him to do so.

According to Plaintiff, a "detainer" was lodged against him by the Riverdale Police (Illinois) on March 29, 2013. (DE 1 at ¶ 8 and page 9.) He became aware of the detainer on April 21, 2013.[1] (DE 34-5 at 5.) Thereafter, he submitted a written request to the Michigan Department of Corrections ("MDOC") records office, asking that the Riverdale prosecutor's office be notified that he was incarcerated in Michigan. (DE 1 at ¶ 9.) He testified that he sent several kites to the records office supervisor, but received no response. (DE 34-5 at 6.)

On May 7, 2013, Teri Taylor, the Records Officer Supervisor at the Egeler Reception and Guidance Center, sent a letter to the Riverdale Police Department to ascertain how it planned to proceed with Plaintiff's pending charge. (DE 1 at 12.) Ms. Taylor informed Plaintiff that she was awaiting a response to the letter, but

---

[1] In his deposition, Plaintiff apparently misstates the date as "2015." However, all of the relevant events in this matter occurred in the spring of 2013.

that she was waiting to file the IAD paperwork because she did not know the prosecutor's full address. (DE 34-5 at 6.) Plaintiff was apparently transferred to the Cooper Street Facility on May 24, 2013, and thereafter Defendant Leffler took over the handling of the IAD paperwork. (Id. at ¶ 16.)

When Defendant Leffler did not receive a response from the Riverdale Police Department, she contacted the Cook County Prosecutor's Office and "received information that the prosecutor's office would not be extraditing Plaintiff and did not wish to pursue a formal detainer against him." (DE 34-2 at ¶ 5.) On June 18, 2013, she sent a kite response to Plaintiff stating the following:

> Per Tom Driscoll the Prosecuting Attorney of Riverdale IL. They will not extradite you on the charges. They are changing the warrant to in state pick up only. Therefore I have revoked your detainer on the pending charges.[2]

(DE 1 at 34.) Defendant Leffler further avers that she believed that no additional action was required because there was no detainer to trigger the IAD procedures. (DE 34-2 at ¶ 6.) Plaintiff, however, contends that Defendant Leffler did not have authority to render such a judgment call in this matter and was only required to file the IAD paperwork with the State of Illinois. (DE 1 at 6.) He contends that, if the

---

[2] Defendant Leffler clarifies in her affidavit that the records office does not "have the authority to 'revoke' a formal detainer placed by a law enforcement jurisdiction in our or any other state . . . ." (DE 34-2 at ¶ 6.) Further, in the context of this record, the phrase "changing the warrant" implies that the Illinois prosecutor prospectively decided to change course in how to proceed with respect to Plaintiff's pending charges.

3

IAD paperwork had been properly filed, the charges would have been resolved—and likely dropped—prior to his parole board hearing. (Id. at 7.) Instead, he was arrested on the charges prior to his August 11, 2015 deposition and extradited back to Illinois. (DE 34-5 at 7.) Plaintiff asks the Court to declare that he is entitled to enjoy the benefit of the IAD and to correct the MDOC records to reflect that there are no criminal charges arising from the detainer. He also seeks compensatory and punitive damages, as well as costs and attorney fees. (DE 1 at 8.)

###### B.     The Instant Motion

Defendant Leffler filed the instant motion on January 27, 2016. (DE 34.) She contends that she did not violate the IAD because it was never triggered by the Illinois prosecuting attorney filing a formal detainer. She argues that the mere fact that there was a warrant for Plaintiff in Illinois is not sufficient to activate the requirements of the IAD. Instead, a formal detainer is required.

Plaintiff did not file a response to Defendant's motion, even after being granted three extensions. In an abundance of caution, I attempted to hold a hearing in this matter to allow Plaintiff an opportunity to present his arguments, with the hearing initially set for July 13, 2016. (DE 40.) That day, however, Plaintiff informed my chambers that he was having transportation issues and asked if the hearing could be rescheduled. He eventually showed up for the hearing, but at that point opposing counsel had already been informed that the hearing was going to be

rescheduled, at Plaintiff's request. The hearing was duly rescheduled for July 22, 2016 (DE 41), but on that day my chambers was informed that Plaintiff would be unable to attend the hearing because he was arrested and placed in custody in Kent County, Michigan, which the Court has confirmed through the county's website. (DE 42.) I then concluded that the matter would be decided on the papers pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). (Id.)

### D. **Standard**[3]

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

---

[3] For reasons that are unclear to the Undersigned, Defendant Leffler files her motion pursuant to "Rule 58A," but does not provide the Court with the standard for such a motion. Accordingly, and because Defendant consistently calls her motion one for summary judgment, I will use the standard under Federal Rule of Civil Procedure 56.

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

"[E]ven where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014).  However,

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *see also F.T.C.*, 767 F.3d at 630 n.11.

### E.  <u>Discussion</u>

The IAD is an agreement between 48 states, the Federal Government, and the District of Columbia, the purpose of which is to "'establish cooperative procedures' and to 'encourage the expeditious and orderly disposition' of charges outstanding in one jurisdiction against a prisoner who is 'already incarcerated' in another jurisdiction." *Jenkins v. United States*, 394 F. 3d 407, 412-13 (6th Cir. 2005) (quoting 18 US.C. App. 2 § 2 art. I).  Specifically, "the IAD facilitates the transfer of prisoners 'to the receiving State for trial prior to the termination of his [or her] sentence in the sending State,' and 'it seeks to minimize the consequent

interruptions of the prisoner's ongoing prison term.'" *Id.* (quoting *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001)).

This action, which concerns a Michigan prisoner and an Illinois warrant, is properly analyzed pursuant to the Michigan IAD, M.C.L. § 780.601. *See Stroble v. Egeler*, 408 F. Supp. 630, 633 (E.D. Mich. 1976) (analyzing a state to state IAD conflict under the laws of the sending state). The IAD in Michigan requires that a Michigan prisoner who has an "untried indictment, information or complaint" pending in a party state "on the basis of which *a detainer has been lodged* against the prisoner," must be brought to trial within 180 days after providing written notice to his or her place of imprisonment and a request for final disposition. M.C.L. § 780.601, Article III(a) (emphasis added). "[T]he provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated." *United States v. Dixon*, 592 F.2d 329, 333 (6th Cir 1979) (citing *United States v. Mauro*, 436 U.S. 340 (1978)).

The instant matter turns on whether or not Illinois lodged a detainer against Plaintiff. Although the IAD does not itself define the word "detainer," the Supreme Court has defined it as "'a notification filed with the institution in which a prisoner is serving a sentence, advising that he [or she] is wanted to face pending criminal charges in another jurisdiction.'" *Mauro*, 436 U.S. at 359 (quoting H.R.

8

Rep. No. 91-1018, p. 2 (1970); S. Rep. No. 91-1356, p. 2 (1970); U.S. Code Cong. & Admin. News 1970, p. 4865). The Sixth Circuit has described a detainer as an "informal process" that is "simply a notice filed with the institution in which a prisoner is serving a sentence, advising that the prisoner is wanted to face pending criminal charges elsewhere and requesting the custodian to notify the filing jurisdiction prior to releasing the prisoner." *Dixon*, 593 F.2d at 339 n. 3. However, "[s]imply being suspected of wrongdoing in one jurisdiction while in prison in another jurisdiction is insufficient to trigger a person's rights under the IAD." *United States v. White*, No. 13-20423, 2014 WL 5308017, at *3 (E.D. Mich. Oct. 8, 2014).

Here, Plaintiff provides as an attachment to his complaint an April 23, 2013 document titled "DETAINER" from the Mecosta County, Michigan Sheriff's Office, which indicates that he has a "hold with this department and must be returned to this facility before releasing," based on a charge of fleeing and eluding. (DE 1 at 9.) "This department" is apparently the Riverdale Police Department in Illinois. (Id.) In a sworn statement, Defendant avers that the Cook County prosecutor's office "would not be extraditing Plaintiff and did not wish to pursue a formal detainer against him." (DE 34-2 at ¶ 5.) According to Defendant, this means that no formal detainer was issued, and therefore the IAD is inapplicable to Plaintiff's case.

It appears from Defendant Leffler's affidavit, the word "detainer" is used by her office in somewhat the same way that the word "pleading" is used by attorneys: generically and not always consistent with the technical definition outlined in the Rules.[4] Specifically, while Defendant Leffler previously told Plaintiff that she had "revoked [his] detainer," she now explains in her sworn affidavit that her office does "not have the authority to 'revoke' a formal detainer." (DE 34-2 at ¶¶ 5-6.) In fact, she was only aware of Plaintiff's pending charges, not because of a *detainer*, but because of a *hold* placed in the Law Enforcement Information Network ("LEIN") system. (Id. at ¶ 4.) However, a mere "hold placed in the . . . LEIN system that is not acknowledged by the sender or recipient as a detainer is insufficient to activate the IAD." *People of the State of Michigan v. Luis Fernando Gallego*, 199 Mich. App. 566, 574 (1993). Accordingly, the IAD has likewise not been activated in this matter.

Plaintiff's seemingly most persuasive evidence is an April 23, 2013 document titled "DETAINER" from the Mecosta County, Michigan Sheriff's Office, which indicates that he has a "hold with this department and must be returned to this facility before releasing," based on a charge of fleeing and eluding in Illinois. (DE 1 at 9.) However, the defendant in *Gallego* also received a

---

[4] While attorneys loosely refer to every scrap of paper that they file in court as a "pleading," Fed. R. Civ. P. 7 includes only complaints, answers, and replies to answers within the technical definition of what constitutes a "pleading."

10

"detainer action letter" alerting the Oakland County Sheriff's Department that he was in federal custody. *Id.* at 568-69. The court did not consider such a letter, despite it containing the word "detainer," to be a formal detainer sufficient to activate the strictures of the IAD. *Id.* Moreover, it did not consider such a letter sufficient to be an acknowledgement by the sender or recipient as a detainer. *Id.* at 574.

The uncontroverted facts in this case fall squarely within the holding in *Gallego*: the MDOC learned of the outstanding charge in Illinois as the result of a hold placed in the LEIN system, Plaintiff was informed of the charge through a document titled "detainer," but the prosecuting attorney in Illinois declined to pursue a formal detainer, which would have invoked the IAD. Instead, it is undisputed that the Illinois prosecutor opted to simply leave an in state warrant on file in the LEIN system, and would arrest Plaintiff should he happen to have any contact with Illinois law enforcement officers in the future. Nothing about Defendant Leffler's imprecise nomenclature—and loose use of the word "detainer" to mean several different things—changes the reality that no formal "detainer" sufficient to trigger the provisions of the IAD was in place. Specifically, the uncontroverted facts in the record demonstrate that there was never a notification filed with the institution in which Plaintiff was serving his sentence advising that he was wanted to face pending criminal charges in Illinois. *See Mauro*, 436 U.S. at

359. Despite several opportunities to do so, Plaintiff has failed to show otherwise. Accordingly, I recommend that Defendant Leffler's motion for summary judgment be **GRANTED**.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 29, 2016  s/Anthony P. Patti
 Anthony P. Patti
 UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on July 29, 2016, electronically and/or by U.S. Mail.

 s/Michael Williams
 Case Manager for the
 Honorable Anthony P. Patti

13